## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **THE STEEL WORKS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )  **No. 07-2099-CM** |
| | ) |
| **SPECIALTY PARTS, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

Plaintiff, the Steel Works, LLC, brings this action against defendants Specialty Parts, Inc.,

Don Roberts, and Roberts Industries, Inc.  The case is before the court on three motions: (1)

plaintiff's Motion to Dismiss Specialty Parts, Inc.'s Counterclaim (Doc. 16); (2) defendant Specialty

Parts, Inc.'s Motion to Allow Defendant to File an Amended Counterclaim (Doc. 20); and (3)

defendant Specialty Parts, Inc.'s Motion to Allow Defendant to File a Second Amended

Counterclaim (Doc. 31).  For the following reasons, the court denies each motion.

## I.    Background

Plaintiff filed this action on March 1, 2007.  Defendant Specialty Parts, Inc. ("defendant")

answered the complaint on June 11, 2007, alleging two counterclaims.  First, defendant brings a

claim for breach of contract.  Defendant bases this claim on the following allegations: (1) In May of

2006, plaintiff offered to provide defendant with a quantity of steel in exchange for

$19,571.18—$17,571.18 for the steel and $2,000 toward defendant's preexisting debt to plaintiff;

(2) defendant accepted plaintiff's offer, paid plaintiff the specified sum, and notified plaintiff that

time was of the essence; (3) plaintiff did not initially provide the steel and instead assessed the total

sum to defendant's debt; and (4) although plaintiff later shipped the steel, the delay hurt defendant's business.  Second, defendant brings a claim for tortious interference with a contractual relationship.  Defendant bases this claim on the listed facts, and also alleges that: (1) plaintiff knew of defendant's contracts with its customers; (2) plaintiff knew that defendant depended on plaintiff's delivery of the steel to satisfy its customers' contracts; and (3) plaintiff, without justification, caused defendant to breach its customers' contracts by initially refusing to ship the steel.

The first motion filed regarding these counterclaims was plaintiff's Motion to Dismiss (Doc. 16).  Plaintiff contends that under Fed. R. Civ. P. 12(b)(6) and the Supreme Court's new standard in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), defendant's allegations are insufficient to state a claim upon which relief can be granted.  Regarding the tortious interference claim, plaintiff argues that the allegations are simply recitations of the essential elements for such a claim under Kansas law.  Specifically, plaintiff challenges defendant's failure to identify a specific contract.  Regarding the breach of contract claim, plaintiff argues that the allegations are not sufficient to entitle defendant to relief.  Plaintiff highlights that defendant acknowledges plaintiff's eventual shipment of the contracted-for steel.  Plaintiff also stresses that defendant does not allege a contractual provision for time being essential.  Plaintiff cites Fed. R. Civ. P. 9(c) for the proposition that "[defendant] is required to plead the allegations of a denial of performance of contract with specificity and particularity."  Lastly, plaintiff argues that the breach of contract claim must fail because the alleged contract lacked consideration.  Plaintiff states that because defendant agreed only to pay a sum that it already owed to plaintiff, no new consideration supported the contract.

Defendant responds by initially noting that plaintiff's motion to dismiss "reads more as if a Motion for More Definite Statement."  Although defendant notes that it "will submit an amended

counterclaim," it also contends that its allegations are sufficient to withstand plaintiff's motion to dismiss.  Without citation, defendant asserts that alleging tortious interference with a contractual relationship only requires that plaintiff knew of the contract, and not the parties to the contract. Defendant relies on the Uniform Commercial Code to supply timeliness as a part of the contract. Regarding whether there was consideration for the new contract, defendant argues that there was a separate agreement to satisfy the preexisting debt and that the present contract independently agreed to exchange a market price payment, plus a portion of the debt, for steel.

Plaintiff's reply brief primarily reiterates the previously-stated arguments with one exception.  Plaintiff adds the argument that defendant's tort claims are subsumed within the contract claim.  Because this argument did not appear in plaintiff's initial briefing for this motion, the court will not consider it regarding plaintiff's Motion to Dismiss.  *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning*, No. 07-2319-CM, 2008 WL 191422, at *3 (D. Kan. Jan. 22, 2008) ("This court will strike new arguments that appear in reply briefs . . . .").

The second motion filed regarding defendant's counterclaims was defendant's Motion to Allow Defendant to File an Amended Counterclaim (Doc. 20).  Defendant filed this motion on October 18, 2007.  Defendant offers two reasons for the need to amend the counterclaim.  First, "while defendant believes its Counterclaim contains sufficient factual material to state a claim upon which relief can be granted, it is not adverse to amending its Counterclaim to add the factual detail that Plaintiff seeks."  Second, "Defendant has just recently been able to complete its review of Plaintiff's initial disclosures, which give rise to a new claim of tortious interference with prospective business relationships against Plaintiff."

Plaintiff opposes defendant's motion to amend the counterclaim.  Plaintiff states that defendant's proposed amended counterclaim does not contain any new facts.  Instead, plaintiff

argues that defendant only made "minor grammatical changes" to its initial claims and added a deficient third claim.  Considering the proposed amendments to not add any new detail to the initial counterclaims, plaintiff repeats the arguments made in its Motion to Dismiss.  Regarding the new claim, plaintiff argues that defendant has not identified a particular business relationship with which it allegedly interfered.  Additionally, plaintiff argues that defendant's tort claims are subsumed within the contract claim.  Because of these reasons, plaintiff contends that allowing defendant to amend its counterclaims would be futile.

The third motion filed regarding defendant's counterclaims was defendant's Motion to Allow Defendant to File a Second Amended Counterclaim (Doc. 31).  Defendant filed this motion on January 4, 2008.  Defendant's proposed second amended counterclaim adds two fraud counts based on the same facts.  Defendant acknowledges that the deadline to file such motions expired on August 31, 2007, but contends that it could not have learned of necessary new information until it deposed Ted Cooper.  Defendant deposed Mr. Cooper on December 4, 2007.

Plaintiff opposes defendant's second motion to amend its counterclaim.  Plaintiff again argues that because the proposed second amended complaint does not substantively affect defendant's initial counterclaims, the arguments from its motion to dismiss remain applicable and show that defendant's counterclaims fail to state a claim upon which relief can be granted.  Regarding the fraud claims, plaintiff argues that defendant has not pleaded these claims with sufficient specificity under Fed. R. Civ. P. 9(b).  Plaintiff also contends that defendant has not alleged any detriment related to the fraud.  Lastly, plaintiff again argues that defendant's tort claims should be dismissed because they are subsumed within defendant's contract claim.

Defendant replies that plaintiff will not be prejudiced by the proposed amendment because "[t]he fraud counts are explicitly linked to the behavior of Cooper and [plaintiff] in May of 2005,

and such actions are also the basis for Defendant's pre-existing breach of contract and tort claims."

Defendant also disputes plaintiff's continuing arguments that its prior claims are insufficient to state

a claim upon which relief can be granted.  Regarding the fraud claims, defendant states that its

allegations are sufficient to meet the pleading requirements of Fed. R. Civ. P. 9(b).  Defendant

identifies its detriment suffered as a result of the fraud as "the lost revenue it suffered due to its

reliance on Plaintiff's promise to ship steel."  Finally, defendant responds that its tort claims are not

subsumed by the contract claims because "fraud is the independent tort giving rise to Defendant's

claim for punitive damages."

It would be inefficient to address whether defendant's initial counterclaims should be

dismissed and then to determine whether similar claims and additional claims should be added.

Similarly, it would be inefficient to determine whether a new counterclaim should be allowed, and

then address whether additional counterclaims should immediately supplant the prior counterclaims.

In the interest of judicial economy, the court resolves these motions in the reverse order from which

they were filed.

## II.     Defendant's Motion to Allow Defendant to File a Second Amended Counterclaim

Federal Rule of Civil Procedure 15(a)(2) states that a district court "should freely give leave

[to amend] when justice so requires."  A district court is not required to grant such leave if the

proposed amendment would be futile.  *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521

F.3d 1278, 1288 (10th Cir. 2008).  A proposed amendment is futile if it would be subject to

dismissal.  *Id.*

Courts in this district also consider the timeliness of a motion to amend when determining

whether to give leave to amend.  *See Lara v. Unified Sch. Dist. No. 501*, No. 06-4145-RDR, 2008

WL 920596, at *4 (D. Kan. Apr. 3, 2008) (quoting *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274,

1285 (10th Cir. 2006) for the statement "While Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires,' if there has been undue delay on the part of the plaintiff in raising the claim, the district court may properly deny the motion as untimely."). When considering the timeliness of the motion, the court focuses on the reason for any delay. *Id.* If there is not an adequate explanation for the delay, denial of the motion is appropriate. *Id.* ("'[U]nexplained delay alone justifies the district court's discretionary decision' to deny leave to amend and 'courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based sometime prior to the filing of the motion to amend.'"); *See Stoermann-Snelson v. St. Luke's Health Sys.*, No. 07-2214-KHV, 2008 WL 686125, at *3 (D. Kan. Mar. 12, 2008) ("Without any valid explanation for the delay of more than three months beyond the scheduling order deadline to amend the complaint, the Court may properly deny plaintiff's request for leave to amend.").

Here, the scheduling order deadline for filing motions to amend was August 31, 2007 (Doc. 13). Defendant filed the motion to file a second amended counterclaim (Doc. 31) on January 4, 2008. Defendant's only explanation for this delay is that it could not have discovered necessary information until it deposed Mr. Cooper. Defendant deposed Mr. Cooper on December 4, 2007. Defendant provides no explanation for the month-long delay between the deposition and the filing of the present motion. Defendant also acknowledges that the majority of the facts supporting the proposed new claims were known to defendant before the deposition—"the only additional fact alleged is the deceitful intent of [plaintiff]." Because the court finds defendant's explanation of its delay to be inadequate, the court denies defendant's motion to file a second amended counterclaim (Doc. 31).

Even if the court considered defendant's filing timely, the court would still deny the present motion. Defendant's fraud allegations appear to be indistinguishable from its breach of contract

claim.  Under Kansas law, "the basis for [a] fraud claim [must be] different from the conduct upon

which a breach of contract claim is based, and the damages must be greater than those caused by the

breach of contract claim alone."  *LaCrosse Furniture Co. v. Shoda Iron Works Co.*, 06-2505-JTM,

2007 WL 4463572, at*2 (D. Kan. Dec. 17, 2007) (citing *Wade v. Emcasco Ins. Co.*, 483 F.3d 657,

675 (10th Cir. 2007)).  Additionally, "'an action for breach of contract [cannot be turned] into an

action for fraud by merely alleging reliance on representations that the contract would be performed

and detriment from its breach.'" *Id.* (quoting *Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979)).

Specifically*,* "the independent tort of fraud must cause damages beyond those suffered by breach of

contract." *Id.* (quoting *Heller v. Martin*, 782 P.2d 1241, 1246 (Kan. Ct. App. 1989)).

Here, defendant acknowledges that "the only additional fact alleged is the deceitful intent of

[plaintiff]."  Except for punitive damages, defendant's alleged damages for the fraud claims are

identical to the damages previously alleged.  Defendant does not allege any additional injury beyond

those defendant also attributes to the breach of contract.  Because defendant's fraud claims would be

subject to dismissal, the proposed amendment would be futile.

**III.     Defendant's Motion to Allow Defendant to File an Amended Counterclaim**

The judgment standards applied to defendant's motion to file a second amended

counterclaim (Doc. 31) also apply to defendant's motion to allow defendant to file an amended

counterclaim (Doc. 20).  The same deadline from the scheduling order—August 31, 2007—

continues to apply.  Defendant filed this motion on October 18, 2007.  Defendant offers two

explanations for its need to amend the counterclaim after the deadline.  First, defendant responds to

plaintiff's motion to dismiss by noting that it "is not adverse to amending its Counterclaim to add the

factual detail that Plaintiff seeks."  Second, defendant claims that its review of plaintiff's initial

disclosures, which it received on September 10, 2007, "give rise to a new claim of tortious

interference with prospective business relationships." The court addresses these explanations separately.

The court finds defendant's explanation regarding its need to add factual detail to satisfy plaintiff's motion to dismiss to be inadequate. If defendant added factual detail, this explanation would be valid. Instead, defendant made only nonsubstantive changes. For example, defendant changed the word "assess" to "credit" in the breach of contract claim and added phrases related to "reasonable time"—"after an unreasonable amount of time" and "[refusing to ship] within a reasonable time"—to both claims. Oddly, in the proposed changes to the tortious interference with a contractual relationship claim, defendant changed some of the references to "its customers" from plural to the singular "its customer."[1] Because defendant did not add factual details, the court rejects this explanation for defendant's need to amend its counterclaim after the deadline.

The court also finds defendant's explanation regarding newly-acquired information also to be inadequate. Defendant's new claim is for tortious interference with prospective business relationships. Defendant alleges: (1)"defendant had a business relationship with a customer prior to and during May 2006"; (2) "defendant's business relationship had a probability of future economic benefit to the defendant"; (3) "plaintiff knew that [d]efendant had a business relationship with defendant's customer and reasonably knew that plaintiff's failure to deliver steel would have an adverse impact on [d]efendant's relationship with its business relationship with its customer"; (4) "except for the conduct by [p]laintiff . . . defendant was reasonably certain to have continued its business relationship with its customer"; (5) "[p]laintiff intentionally refused to perform under the

---

[1] The court notes that this actually provides less factual detail. Referencing "customers" implies that there are at least two customers. Changing some of those references to "customer," but leaving a reference to "customers," removes that certainty and creates confusion about the number of customers at issue.

contract by failing to deliver steel to the defendant in a reasonable time"; and (6) "as a . . . result, . . . [d]efendant was unable to meet its obligations to its customer." The only distinctions between these allegations and the initial allegations for tortious interference with a contractual relationship are the replacing of "contract" with "business relationship" and whether this "business relationship" would continue in the future. Defendant does not explain why it needed plaintiff's disclosures to know whether its own business relationships would have continued. Without more explanation, the court denies defendant's motion to file an amended counterclaim (Doc. 20).

IV.     **Plaintiff's Motion to Dismiss**

Plaintiff argues that defendant's initial counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). This court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face . . . or when an issue of law is dispositive." *Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *4 (D. Kan. Oct. 24, 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**A.      Tortious Interference with a Contractual Relationship Counterclaim**

Here, plaintiff argues that defendant has only provided a recitation of the elements needed for a tortious interference with a contractual relationship claim under Kansas law.  Specifically, plaintiff stresses that defendant "did not make any allegation that any particular contract was breached as a result of [plaintiff's] conduct."  Plaintiff relies on language in *Bushnell Corp. v. ITT Corp.*, 913 F. Supp. 1276, 1288 (D. Kan. 1997).  In *Bushnell*, Judge Lungstum stated that because the plaintiff in that case did not "allege[] that any particular contract was breached as a result of conduct by defendant, [t]he court conclude[d] that this most basic element of breach must be alleged to state a claim for tortious interference with contract."  *Id.*

Plaintiff's reliance on *Bushnell* is misplaced.  The facts in *Bushnell* were that the plaintiff only alleged that its customers ceased doing business with it and did not allege that any contract was breached.  *Id.*  Similarly, in *IT Network, Inc. v. Shell*, 21 F. Supp. 2d 1280, 1282 (D. Kan. 1998), Judge Marten acknowledged *Bushnell*, by stating "Judge Lungstrum concluded that the most basic element of breach must be alleged to state a claim for tortious interference with contract" and rejecting an argument that a claim may be stated by alleging that the "defendant caused a party to the contract not to perform or complete its duties under the contract."  Judge Marten, however, did not dismiss the complaint.  *Id.* ("It does not follow, however, that the plaintiff's claim should be dismissed.  Although the complaint does not specifically allege any of [plaintiff's] customers breached their contracts, the complaint nonetheless does place defendants on notice of the claim for tortious interference with contract.").

Here, defendant alleged that "plaintiff intentionally caused Defendant to breach Defendant's contracts with its customers by refusing to timely ship steel to defendant."  This is a more precise

allegation of breach than what was alleged in *IT Network*.  While defendant's tortious interference claim could benefit from more specificity, or substantive amendments, it remains that the claim is plausible, and not just conceivable.  Plaintiff is on notice of the tortious interference with contract claim.  At this stage in the case, defendant's allegations are sufficient to state a claim.  The court denies plaintiff's motion to dismiss on this issue.

**B.      Breach of Contract**

Here, plaintiff argues that defendant's claim for breach of contract is only speculative and not plausible because defendant acknowledges that plaintiff complied with the contract.  Plaintiff contends that defendant has not alleged that time being of the essence was a provision in the contract.  Moreover, plaintiff relies on Fed. R. Civ. P. 9(c) to require defendant to plead the allegations of denial of performance under a contract with specificity and particularity.  Lastly, plaintiff argues that the contract lacked consideration to be enforceable because of defendant's pre-existing debt.

Defendant alleged that when it accepted plaintiff's offer, it relayed that "time was of the essence."  Defendant also responds that Uniform Commercial Code § 2-309(1)—which Kansas has enacted under Kan. Stat. Ann. § 84-2-309(1) as "[t]he time for shipment or delivery or any other action under a contract if not provided in this article or agreed upon shall be a reasonable time"—provides the clause of the contract that plaintiff allegedly breached.  Without more information regarding the contract and at this stage in the case, the court finds that defendant has stated a claim for breach of contract based on plaintiff's alleged failure to ship within a reasonable time.

The court also rejects plaintiff's argument based on Fed. R. Civ. P. 9(c).  Without further legal support, plaintiff states "[u]nder Fed. R. Civ. P. 9(c), [defendant] is required to plead the

allegations of a denial of performance of contract with specificity and particularity." Rule 9(c)

provides, "when denying that a condition precedent has occurred or been performed, a party must do

so with particularity." "In contract law[,] a condition precedent is generally a specific precondition

to performance that is articulated within the terms of a contract." *McDowell-Jacobs v. Huebner*, 06-

2269-KHV-GLR, 2006 WL 2620045, at *2 (D. Kan. Sep. 12, 2006). Although plaintiff does not

identify what "condition precedent" it believes was improperly denied, the court assumes plaintiff

challenges defendant's specificity regarding time being of the essence. The passage of time was not

a condition precedent to either party's performance under the contract as alleged in defendant's

breach of contract claim, nor has defendant denied that the condition occurred.

Plaintiff's "lack of consideration" argument also fails. Defendant alleges that "plaintiff

offered to ship a quantity of steel to defendant . . . at a cost of $17,571.18, plus $2,000 towards

defendant's debt to plaintiff." Without more facts and at this stage in the litigation, the court finds

that the reference to $17,571.18 is a sufficient indication of consideration to state a claim for breach

of contract.

Based on the above reasons, the court denies plaintiff's motion to dismiss (Doc. 16).

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Dismiss Specialty Parts, Inc.'s

Counterclaim (Doc. 16) is denied.

**IT IS FURTHER ORDERED** that defendant Specialty Parts, Inc.'s Motion to Allow

Defendant to File an Amended Counterclaim (Doc. 20) is denied.

**IT IS FURTHER ORDERED** that defendant Specialty Parts, Inc.'s Motion to Allow

Defendant to File a Second Amended Counterclaim (Doc. 31) is denied

Dated this <u>28th</u> day of May 2008, at Kansas City, Kansas.

<u>**/s/Carlos Murguia**</u>

-12-

**CARLOS MURGUIA**
**United States District Judge**